1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT SEATTLE

10   SECURITY NATIONAL                    CASE NO. 2:21-cv-1287
     INSURANCE COMPANY, a Delaware
11   Corporation,                         ORDER ON CROSS-MOTIONS
                                          FOR PARTIAL SUMMARY
12                     Plaintiff,         JUDGMENT

13            v.

14   MICHELLE URBERG; LEE BAUGH;
     WILLIAM REEVE; MARISSA
15   MORGAN; HAOTIAN SUN; XIAN
     GONG; DOUGLAS PYLE, all
16   Washington residents,

17                     Defendants.

18

19

20

21

22        This matter is before the Court on the Parties' Cross-Motions for Summary Judgment

23   (Dkt. Nos. 17, 24.) Having reviewed Defendants' Response (Dkt. No. 27), Plaintiff's Response

     (Dkt. No. 31), Defendants' Reply (Dkt. No. 33), Plaintiff's Reply (Dkt. No. 29), and all other
24

1  supporting materials and documents, the Court GRANTS in part and DENIES in part Plaintiff's

2  Motion, and DENIES Defendants' Motion.

3  **BACKGROUND**

4        This case arises out of the new construction of four homes in the Ballard neighborhood of

5  Seattle. Defendants are the homeowners and original purchases of the homes ("Homeowners").

6  The Homeowners purchased the homes in 2015 and in 2016 filed suit in state court against the

7  homes' developer and general contractor alleging construction defects. (Pl. Motion for SJ at 3

8  ("Pl. Mot.").) The Homeowners also included claims for Breach of Contract, Breach of Express

9  Warranty, and Breach of Implied Warranty. (Id.) In response, the general contractor filed a third-

10  party complaint against LND, a subcontractor for the homes. (Id. at 4.) The third-party complaint

11  alleged that the general contractor entered into a contract with LND Construction ("LND") "to

12  perform labor and/or supply materials for the construction of the homes that are the subject of

13  this lawsuit." (Id.; Third-Party Complaint at 7, ¶ 7 (Dkt. No. 1-5).)

14        Plaintiff Security National Insurance Company ("Security National") insured LND from

15  May 2012 to May 2015. (Pl. Mot. at 4.) Security National issued Commercial General Liability

16  Policies to LND, all of which are subject to Endorsement No. CG2134 NR 0187, Exclusion –

17  Designated Work ("New Construction – Completed Ops Exclusion"), which provides:

18  **EXCLUSION – DESIGNATED WORK**

19  This endorsement modifies insurance provided under the following:

20  COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

21  **SCHEDULE**

22  **Description of your work:**

23  New construction of a dwelling and work within, or on, the premises of a
dwelling prior to the certificate of occupancy of the owner, regardless of whether

24

the dwelling is a custom home or the dwelling is built as part of a tract or multi-dwelling development;

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

(Pl. Mot. at 4-5; Complaint Exhibits A at 59, B at 59, and C at 59 ("the Policies") (Dkt. No. 1-1; 1-2; 1-3).)

"Products-completed operations hazard" is defined in the policies as: "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) [p]roducts that are still in your physical possession; or (2) [w]ork that has not yet been completed or abandoned." (Complaint Exs. A, B, and C at 41.)

The policies also contain Endorsement No. CG 21 53 NR 01 96, Exclusion – Designated Operations ("New Construction – Ongoing Ops Exclusion"), which provides:

### EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Designated Ongoing Operation(s):**

New construction of a dwelling and work within, or on, the premises of a dwelling prior to the certificate of occupancy of the owner, regardless of whether the dwelling is a custom home or the dwelling is built as part of a tract or a multi-dwelling development;

. . .

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A –
BODILY INJURY AND PROPERTY DAMAGE LIABILITY ( Section I –
Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out
of the ongoing operations described in the Schedule of this endorsement,
regardless of whether such operations are conducted by you or on your behalf or
whether the operations are conducted for yourself or for others. . .

(Pl. Mot. at 5-6; Complaint Exs. A, B and C at 60.)

Security National refers to these exclusions as the "New Construction Exclusions."

In August 2016, shortly after the Homeowners filed the underlying complaint, the general

contractor sought defense by Security National seeking coverage as an "Additional Insured." (Pl.

Mot. at 6.) On November 2, 2016, LND tendered defense of the third-party complaint to Security

National. (Id.) On February 10, 2017, Security National denied coverage to both the general

contractor and LND citing the "New Construction Exclusions" and denying the general

contractor for the additional reason that it was not an "Additional Insured" under the policies.

(Id.)

The lawsuit continued and the Homeowners ultimately settled with the developer, but

agreed not to execute on the judgment and were instead assigned the developer's rights against

the general contractor. (Pl. Mot. at 7.) In October 2017, LND filed for bankruptcy. (Declaration

of Todd Skoglund, Exhibit 10 (Dkt. No. 25-10). In 2018, the Homeowners settled with the

general contractor for $800,000 and were similarly assigned any and all claims the general

contractor had against LND and its insurance carrier, Security National. (Pl. Mot. at 6.) The

Homeowners then obtained a default judgment against LND in the amount of $616,650.00 with

an additional $20,071.26 in interest as of September 2019. (Id. at 8.)

In May 2021, the Homeowners obtained a Writ of Execution from the state court that

allowed the Homeowners to levy LND's insurance policy for the purpose of collecting on the

1    default judgment. (Pl. Mot. at 8-9.) The Writ of Execution specifically states that "[t]he sole

2    asset which plaintiffs seek to execute upon and to be levied is LND . . . , AmTrust North

3    America Insurance policy." (Pl. Mot. at 9.) AmTrust is an agent of Security National. Because of

4    the language in the Writ of Execution, Security National contends that the only property to be

5    levied was LND's insurance policy, not any extra-contractual causes of action. (Id.)

6            However, the Sheriff's Notice of Levy and Notice of Sale listed the property to be sold

7    as:

8            "[a]ll rights, privileges, claims and causes of action including but not limited to
             breached [sic] of the duty to investigation [sic], negotiation, defend, settle,
9            indemnify or, breach of contract, negligence, legal malpractice, fiduciary breach,
             Consumer Protection Act violations, and bad faith, that … LND … has or had
10           against AmTrust North America, AmTrust Financial Company, Security National
             Insurance Company, and/or all affiliated companies, brokers and agents and any
11           other insurance carrier which insured LND."

12   (Pl. Mot. at 10.)

13           At this point Security National intervened in the underlying lawsuit and moved to quash

14   and set aside the Sheriff's sale. (Pl. Mot. at 10.) Security National argued that the Homeowners

15   lacked standing to bring the extra-contractual claims and that the Sheriff's sale is invalid because

16   it sold more than the Writ of Execution allowed for. (See generally, Security National's Mot. to

17   Quasha and Set Aside Sheriff's Sale ("Mot. to Quash"), Skoglund Decl. Exhibit 34 (Dkt. No. 25-

18   34).) The state court denied Security National's motion. (Skoglund Decl. Ex. 40 (Dkt. No. 25-

19   40).) Security National now brings this case seeking declaratory relief.

20                                              **ANALYSIS**

21   **A.    Summary Judgment Standard**

22           Summary judgment is granted if the movant shows that there is no genuine dispute as to

23   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

24

56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which the

nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative

evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely, a genuine

dispute over a material fact exists if there is sufficient evidence supporting the claimed factual

dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors

Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). And underlying facts are viewed in the light most

favorable to the party opposing the motion. Matsushita, 475 U.S. at 587.

When cross motions are at issue, the court must "evaluate each motion separately, giving

the nonmoving party in each instance the benefit of all reasonable inferences." ACLU of Nev. v.

City of Las Vegas, 466 F.3d 784, 790-91 (9th Cir. 2006) (internal citations omitted). If the

moving party bears the burden of proof on a claim, it "must show that the undisputed facts

establish every element of the claim." Chiron Corp. v. Abbot Lab'ys, 902 F. Supp. 1103, 1110

(N.D. Cal. 1995). But "[w]here the non-moving party bears the burden of proof at trial, the

moving party need only prove that there is an absence of evidence to support the non-moving

party's case." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). Then, the non-

moving party bears the burden of designating "specific facts demonstrating the existence of

genuine issues for trial." Id.

**B.      Security National's Motion for Partial Summary Judgment**

Security National seeks summary judgment as to Counts I and III of its Amended Complaint. (Pl. Mot. at 1.) Count I seeks a declaratory judgment the policies issued by Security National did not cover LND for the claims and damages alleged against it by the third-party complaint. (Am. Comp. at 11 (Dkt. No. 9).) Count III seeks a declaratory judgment that the Homeowners are not entitled to damages as a result of the default judgment they received for their claims against LND. (Id. at 12.) Security National also requests the Court dismiss the Homeowners' counter claims for Breach of Contract, Failure to Act in Good Faith, Bad Faith, Consumer Protection Claims, and "Estoppel & Waiver." (Pl. Mot. at 1.) The Court address Count I first.

1.      LND Had No Coverage Under the Policies

Under Washington law, the duty to defend is broader than the duty to indemnify. Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 52 (2007). An insurance company has the duty to indemnify if the insurance policy actually covers the insured, while the duty to defend arises if the insurance policy conceivably covers the insured. Am. Best Food, Inc. v. Alea London, Ltd., 168 Wn.2d 398, 404 (2010). An insurer is relieved of the duty to defend only if the policy clearly does not cover the claim. Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wn.2d 751, 760 (2002). Courts interpreting an insurance policy will give the language its plain meaning, construing the policy as the average person purchasing insurance would. Woo, 161 Wn.2d at 52. An ambiguity in the policy is interpreted in favor of the insured. Am. Best Food, 168 Wn.2d at 411. A clause in an insurance contract is ambiguous "only when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171 (2005).

1       The duty to defend is generally determined from the "eight corners" of the insurance

2  contract and the underlying complaint. Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 803

3  (2014) as corrected (Aug. 6, 2014). In determining whether there is a duty to defend, the question

4  is whether "there is any reasonable interpretation of the facts or the law that could result in

5  coverage." Am. Best Food, 168 Wn.2d at 405. An insurance company breaches its duty to defend

6  in bad faith as a matter of law if it relies on an arguable legal interpretation of its own policy. Id.

7  at 413. There are two exceptions to this rule, and both favor the insured. Woo, 161 Wn.2d at 53.

8  First, if coverage is not clear from the face of the complaint but coverage could exist, the insurer

9  must investigate and give the insured the benefit of the doubt on the duty to defend. Id. Second,

10  if the allegations in the complaint conflict with facts known to the insurer or if the allegations are

11  ambiguous, facts outside the complaint may be considered. Id. at 54. However, these extrinsic

12  facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to

13  deny its defense of duty. Id.

14       Security National argues that it owed no duty to defend LND pursuant to the New

15  Construction Exclusions that apply to any ongoing operations as well as any completed

16  operations. (Pl. Mot. at 12.) The Court agrees.

17       In claiming the applicability of the New Construction Exclusions, Security National

18  relied on the following allegations contained in the underlying complaint:

19
20
- "Defendant LLJ Ventures LLC acted as and/or identified itself as Declarant for the community.

21
- Defendant LLJ Ventures LLC . . . sold one or more of the homes [sic] the subject of this litigation.

22
- Defendant Proletariat Services Inc. acted as General Contractor for construction of the homes.

23
24
- Defendant Proletariat Services, Inc. provided design-build services on behalf of the owner/developers or one of more named Defendants.

- The homes the subject of this litigation were sold to Plaintiffs in 2015.

- Defendants entered into real estate purchase and sales agreements ("REPSA") with plaintiffs.

- One or more Defendants is a builder-vendor of the homes.

- Plaintiffs are original purchasers.

- Defendants did not construct and/or sell plaintiffs homes that are safe or fit for their intended purpose, and thus breach the implied warranty or habitability."

(Pl. Reply at 5-6; Underlying Complaint (Dkt. 1-4).)

SNIC also points to the fact that the Homeowners brought a Breach of the Implied Warranty of Habitability claim, which can only be brought by the first occupant of a new home purchased from a seller who is a commercial builder. (Id. at 6.) See Stuart v. Coldwell Banker Com. Grp., Inc., 109 Wn.2d 406, 415 (1987) ("[W]hen a vendor-builder sells a new house to its first intended occupant, he impliedly warrants that the foundations supporting it are firm and secure and that the house is structurally safe for the buyer's intended purpose of living in it.") Though Security National relies on Washington law in support of its argument, it does not rely on an interpretation of Washington law and there is no debate between courts as to what elements are required to bring an Implied Warranty of Habitability claim. See Klos v. Gockel, 87 Wn.2d 567, 571 (noting that "for the purposes of warranty liability, the house purchased must be a 'new house,'" which is a question of fact). The Court finds that Security National properly relied on the New Construction Exclusions in denying coverage.

The Homeowners make several arguments in an attempt to claim that Security National denied coverage in bad faith. None of them are successful. First, the Homeowners argue that Security National could not have determined the construction was "new" based on the third-party complaint. (Def. Response at 18.) In support of this argument, the Homeowners claim that the term "construction" "is extraordinarily vague . . ." and therefore an "average person" could not

1    conclude "that the homes in the complaint were "new" construction." (Def. Response at 18.) The

2    Homeowners rely on Madera W. Condo. Ass'n v. First Specialty Ins. Corp., No. C12-0857-JCC,

3    2013 WL 4015649 (W.D. Wash. Aug. 6, 2013) in support of their contention. But Madera is

4    wholly distinguishable from the facts at hand here. In Madera, an insurance policy contained an

5    exclusion for "[a]ny and all claims, including … claims for … 'property damage' … arising out

6    of . . ., the construction of residential properties . . ." 2013 WL 4015649 at *9. The issue before

7    the court in Madera was whether the term 'construction' applied to work done "repainting

8    interiors, minor carpentry work, applying new coatings to the decks, and other minor repairs to

9    the decks." Id. That is completely different from here, where the Homeowners are alleging

10   defects arising from the actual construction of the homes. (See generally, Underlying

11   Complaint.) Further, this work is in fact the very definition of what the Madera court noted the

12   "average person" would reasonably think the term 'construction' means: "As the definition of

13   the word construction suggests, the average person purchasing insurance could easily understand

14   this exclusion to apply only to the building or erection of residential properties (i.e., new

15   construction)." Madera, 2013 WL 4015649, at *9. Defendants' argument runs contrary to the

16   very case they cite to.

17          Second, the Homeowners argue that because there were no dates or timeframes identified

18   in the underlying complaint the claims were conceivably covered. (Def. Response at 17.) This

19   argument is unpersuasive. The date or timeframe is irrelevant to Security National's denial.

20   Security National issued three policies to LND from 2012-2015, all of which included the New

21   Construction Exclusions. And Security National did not deny LND a defense because the claims

22   occurred outside of the coverage period. Rather, Security National assumed the construction

23   occurred during the coverage period, but denied LND a defense because the claims fell under the

24

1  New Construction Exclusions. Having a date or timeframe in the underlying complaint would

2  not have changed that analysis.

3       Because the underlying complaint makes it clear that the defect with the homes arose

4  from new construction, which is not covered under the policy, and Security National's reliance

5  on the elements of a Warranty of Habitability claim does not depend on a legal interpretation, the

6  Court finds that Security National properly found no coverage under the policies and therefore

7  had no duty to defend LND. The Court GRANTS Security National's Motion as to Count I.

8       2.    The Homeowners Breach of Contract Claim

9       The Homeowners assert a Breach of Contract counter claim, alleging that Security

10  National breached its contract by "(1) failing to defend, (2) failing to conduct a timely

11  investigation, (3) placing its interests ahead of and above the underlying claimants [sic] interests;

12  and (4) failing to indemnify." (Am. Answer at 12 (Dkt. No. 12).) Breach of Contract claims

13  depend on proof of four elements: duty, breach, causation, and damages. Northwest Indep. Forest

14  Mfrs. V. Dep't of Labor & Indus., 78 Wn. App. 707, 712 (1995).

15      The Homeowners Breach of Contract claim fails because Security National did not

16  breach its contract with LND. Security National properly denied coverage and a defense to LND

17  based on the New Construction Exclusions. Because Security National did not breach its contract

18  by failing to defend LND, there cannot be a breach for failing to indemnify. Failing to conduct a

19  timely investigation and placing the insured's interest before the insurers are impliedly part of

20  every contract under Washington law. But because a technical violation of these Washington

21  regulations may sustain a Bad Faith claim even if coverage was properly denied, the Court

22  addresses these arguments under the Homeowners' Bad Faith claims.

23

24

1    The Court finds that because Security National did not breach its contract, the

2    Homeowners Breach of Contract claim fails. The Court GRANTS Security National's Motion as

3    to this counter-claim.

4         3.    Homeowners' Claims for Bad Faith and Failure to Act in Good Faith

5         "It is a cornerstone of insurance law that an insurer may never put its own interests ahead

6    of its insured's." Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 803 (2014), as corrected

7    (Aug. 6, 2014). An insurer owes the insured a duty of good faith. Tank v. State Farm Fire & Cas.

8    Co., 105 Wn.2d 381, 385; RCW 483.01.030. This is a "quasi-fiduciary" duty—something less

9    than a true fiduciary duty." Van Noy v. State Farm Mut. Auto. Ins. Co., 142 Wn.2d 784, 792

10   (2001). In seeking a declaratory judgment, an insurer has "an enhanced obligation of fairness

11   toward its insured" arising out of the "[p]otential conflicts between the interests of insurer and

12   insured, inherent in a reservation of rights defense." Tank, 105 Wn.2d at 383.

13        Because Security National did not breach its duty to defend, any arguments that the

14   Homeowners make that it did so in bad faith are unsuccessful. The Homeowners remaining

15   arguments for bad faith hinge on technical violations of WAC 284.300-400, specifically that

16   Security National acted in bad faith when it failed to conduct a reasonable and prompt

17   investigation (Def. Response at 21) and that it breached its duty to act in good faith by failing to

18   keep and maintain claim notes and claim files (Id. at 14).

19             a.    Failure to Investigate

20        Turning to the first argument, the Homeowners fail to meet their burden in showing that

21   Security National acted in bad faith when it failed to conduct a reasonable and prompt

22   investigation. Both Security National and the Homeowners move for summary judgment on this

23   issue.

24

1    Washington courts recognize the right of the insured to pursue tort claims against the

2    insurer for conduct which violates the duty of good faith. "Claims of insurer bad faith 'are

3    analyzed applying the same principles as any other tort: duty, breach of that duty, and damages

4    proximately caused by any breach of duty.'" Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr.,

5    Inc., 161 Wn.2d 903, 916 (2007) (quoting Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485 (2003)).

6    To establish the tort of bad faith in the insurance context the insured must show that the insurer's

7    actions were "unreasonable, frivolous, or unfounded." Kirk v. Mt. Airy Ins. Co., 134 Wn.2d 558,

8    560 (1998). "Whether an insurer acted in bad faith is a question of fact." Smith, 150 Wn.2d at

9    484 (citing Van Noy, 142 Wn.2d at 796).

10    Under Washington law every insurer has a duty to act promptly, in both communication

11    and investigation, in response to a claim or tender of defense. WAC 284-30-330(2)-(4); WAC

12    284-30-360(1), (3); WAC 284-30-370. WAC 284-30-370 governs the standards for a prompt

13    investigation of a claim and requires an insurer to complete the investigation of a claim within

14    thirty days after notification of a claim unless the investigation cannot reasonably be completed

15    within that time. Washington courts have previously found that a violation of the standards set

16    forth in "WACs 284-30-300 through -800 . . . constitutes a breach of the insurer's duty of good

17    faith." Rizzuti v. Basin Travel Serv. of Othello, Inc., 125 Wn. App. 602, 615-16 (2005). And "an

18    insured may maintain an action against its insurer for a bad faith investigation of the insurer's

19    claim and violation of the CPA regardless of whether the insurer was ultimately correct in

20    determining coverage did not exist." Coventry Assocs. v. Am. States Ins. Co., 136 Wn.2d 269,

21    279 (1998). But where a reservation of rights or failure to defend is not at issue, there is no

22    rebuttable presumption of harm and coverage by estoppel is not recognized in this context. St.

23    Paul Fire & Marine Ins. Co. v. Onvia, Inc., 165 Wn.2d 122, 133 (2008). Therefore, a claim for

24

1    bad faith that is brought on a technical violation alone must demonstrate actual harm and

2    damages are limited to the amounts it has incurred as a result of the bad faith. Id. (internal

3    quotation and citation omitted).

4           Here, Security National and its agent, AmTrust, became aware of the underlying lawsuit

5    in August 2016 when the general contract sought to be included as an additional insured under

6    LND's policy. On November 2, 2016, LND alerted AmTrust to the lawsuit and formerly

7    tendered a defense to Security National. (Pl. Response at 15.) AmTrust acknowledged the claim

8    on the same day. (Id.) On February 10, 2017, AmTrust formally issued a declination letter to

9    LND. (Id.) As such, the Homeowners are correct that it took longer than thirty days for Security

10   National to investigate and deny a defense.

11          But the technical breach is all the Homeowners rely on. And the Homeowners make only

12   a perfunctory argument to claim the breach was unreasonable, frivolous, or unfounded. The

13   Homeowners claim that LND told AmTrust that time was of the essence when it tendered the

14   claim to Security National and Security National still failed to promptly conduct an investigation.

15   (Def. Response at 19.) But this argument takes LND's communication to Security National out

16   of context. In an email from LND's counsel to AmTrust, LND's counsel states that he filed an

17   answer to the third-party complaint on behalf of LND as "time was of the essence" and that he

18   would "be happy to email [AmTrust] a copy or to defense counsel if [AmTrust was] going to

19   assign an attorney to defend LND." (Declaration of David Maynard, Exhibit 3 at 2 (Dkt. No. 19-

20   3).) Time was not of the essence to investigate as the Homeowners claim, but rather time was of

21   the essence to enter an answer to the third-party complaint. The Homeowners' arguments

22   otherwise are inaccurate and misleading. The Homeowners do not make any other arguments or

23

24

1   submit any evidence to demonstrate the technical breach was unreasonable, frivolous, or

2   unfounded.

3         And the Homeowners similarly submit no evidence to demonstrate the delay in an

4   investigation resulted in any harm or damages. The Homeowners argue that in instances where

5   an insurer breaches its duty to defend in bad faith it is estopped from relying on exclusions and

6   the insured's costs, attorneys' fees, and judgment become the presumed damages. (Def. Reply at

7   4 (Dkt. No. 33).) This appears to be the Homeowners' Estoppel and Waiver counter-claim. But

8   the Homeowners apply the wrong standard. As articulated above, in situations where the insurer

9   properly denies coverage and a defense, the insured is not entitled to a presumption of damages.

10  Onvia, 165 Wn.2d at 133. The Homeowners also attempt to argue that LND was forced into

11  bankruptcy due to Security National's delay and denial of a defense. (Def. Mot. at 2, 6 and 17

12  (Dkt. No. 24).) But the Homeowners offer no evidence to support this allegation. As such, the

13  Homeowners' failure to investigate claim fails. The Court GRANTS Security National's Motion

14  as to this counter-claim.

15                  b.      Failure to Keep and Maintain Claim Notes and a Claim File

16        The Homeowners' claim that Security National breached it duty of good faith by failing

17  to keep and maintain claim notes is completely without merit.

18        Security National disclosed the existence of its claim file in its initial disclosures. (See

19  Second Declaration of Michael Guadagno, Exhibit 1, Plaintiff's Initial Disclosures (Dkt. No. 30-

20  1.) Federal Rule of Civil Procedure 26 requires a party to provide "a copy – or a description by

21  category and location – of all documents . . . that the disclosing party has in its possession . . .

22  and may use to support its claims or defenses . . ." Fed. R. Civ. P. 26(a)(ii). Security National

23  disclosed its claim file as part of this process, but did not provide a copy. (Pl. Reply at 2;

24  Guadagno Decl. Ex. 1.) Following this, the Homeowners issued their First Interrogatories and

1   Requests for Production, which included a request for the claim file. (Guadagno Decl. Exhibit 2,

2   First Interrogatories and Requests for Production at 15.) Security National responded with a

3   letter rather than a response proposing that the parties delay discovery to await a ruling on a

4   summary judgment motion that Security National intended to file. (Guadagno Decl. Ex. 4 (Dkt.

5   No. 30-4.) Security National's counsel then noted that the local rules require a discovery

6   conference to discuss and told the Homeowners' counsel that he would call on a certain day to

7   discuss. (Id.) It appears the Homeowners' counsel did not answer Security National's call and so

8   Security National's counsel sent a follow up email stating he had just called and that he would

9   try again the following week. (Guadagno Decl. ¶ 7, Ex. 5 (Dkt. No. 30-5).) The Homeowners

10   counsel did not answer the second time either and never returned the call. (Id. at ¶ 7.)

11        The discovery deadline for this case was November 14, 2022. Neither party made any

12   discovery related motions. But now the Homeowners argue that the claim file is not protected,

13   that Security National did not produce any documents in response to discovery and that Security

14   National does not have a claim file or claim notes. (Def. Response at 2.) Whether or not the

15   claim file is protected is irrelevant, as the timeframe for bringing that argument has passed.

16   Security National demonstrates that it did respond to the first discovery request, and it is patently

17   false for the Homeowners' counsel to claim Security National does not have a claim file. Further,

18   the Homeowners' counsel did not participate in a discovery conference and seemingly made no

19   effort to conduct discovery at all for this case. The Homeowners' claim for Breach of Good Faith

20   fails.

21        Because the Homeowners fail to put forth any evidence or support to demonstrate that

22   Security National's technical breach was unreasonable, frivolous or unfounded, as well as any

23   actual damages, the Court GRANTS Security Nationals' request to dismiss the Homeowners'

24

1   Breach of Good Faith, Bad Faith and Estoppel & Waiver claims, and DENIES the Homeowners

2   Motion as to these claims.

3          4.      The Homeowners Consumer Protection Act Claim

4          Security National seeks to dismiss the Homeowners Consumer Protection Act ("CPA")

5   claim. (Pl. Mot. at 1.) The Homeowners' Motion for Summary Judgment does not seek summary

6   judgment on this issue. And though Security National seeks to dismiss this claim it does not

7   actually brief its argument as to this claim.

8          In order to prevail on a CPA claim, the claimant must demonstrate: (1) an unfair or

9   deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which

10  causes injury to the party in his business or property, and (5) which injury is causally linked to

11  the unfair or deceptive act. Onvia, 165 Wn.2d at 134. "[A] violation of any regulation

12  enumerated in chapter 284-30 WAC will automatically establish the first element of a CPA

13  claim. (Id.)

14         The Homeowners can meet element one of their CPA claim due to Security National's

15  technical violation in taking longer than thirty days to investigate. But the same issues with

16  injury and causation in the Homeowners' Bad Faith claim apply here because there is nothing to

17  suggest actual harm from the delay. That being said, while the Court can speculate on the

18  likelihood of success for the Homeowners' CPA claim, absent it being addressed in the briefings

19  the Court cannot grant summary judgment one way or the other. The Court therefore DENIES

20  Security National's Motion as to this counter-claim.

21         5.      Whether the Homeowners are Entitled to Damages

22         As an initial matter, part of Security National's request for relief under Count III has to

23  do with whether the Sheriff's Notice of Sale and Notice of Levy is null and void. (Am. Compl. at

24

12-13 ¶¶ 6.4-6.5.) Security National backtracks in its briefs and claims it is not seeking to overturn the state court's decision in denying its motion to quash the sale. But the fact that the levy and sale is included in its claim for relief and that Security National took its argument regarding the Homeowners' standing verbatim from its state court briefs indicates otherwise. It is also disingenuous for Security National to argue collateral estoppel should not apply because it is not seeking to overturn the state court's decision while it makes the exact same argument it made in state court. (Compare Mot. to Quash at 4-5 and Pl. Mot. at 15.)

Further, Security National was not meritorious in state court for a reason. Security National argues that the Homeowners lack the standing to bring any extra-contractual claims related to LND's policy because third-party claimants have no direct right of action against an insurer for these claims under Washington law. (Pl. Mot. at 15.) What Security National overlooks is that the extra-contractual claims were levied and sold to the Homeowners, which gives them standing to bring them. See RCW 6.17.090 (property liable to execution); Woody's Olympia Lumber, Inc. v. Roney, 9 Wn. App. 626, 633 (1973) (holding that the Supreme Court has determined that RCW 6.17.090 "is sufficiently broad to include unliquidated tort claims even if of dubious value.") That is a critical fact that changes the circumstances from a third-party attempting to sue for extra-contractual claims to a party who purchased and owns the right to these claims. And Security National cannot claim ignorance with this regard as it cited to RCW 6.17 et seq. in its argument in state court to quash the sale of these claims. (See Mot. to Quash at 4.) Security National's argument that Homeowners lack standing fails. And it is also subject to collateral estoppel as well. But because Security National repeatedly states that it is not trying to relitigate this issue, the Court takes that to mean Security National withdraws any argument related to the Sheriff's levy and sale.

1    With regard to the remainder of Count III of the Amended Complaint, the Court is

2    somewhat perplexed. Security National requests declaratory judgment that the Homeowners are

3    not entitled to damages from Security National. (Am. Compl. at 12.) As part of this claim for

4    relief, Security National alleges that pursuant to the terms of its policy, Security National is not

5    obligated to pay any monies or damages to the underlying claimants (the Homeowners) as a

6    result of the default judgment. (Id. at 12 ¶ 6.3.) Typically, when a declaratory judgment action

7    determines that there is no coverage, the insurer's obligations to its insured end. Canal Indem.

8    Co. v. Adair Homes, Inc., 737 F. Supp. 2d 1294, 1303 (W.D. Wash. 2010), aff'd, 445 F. App'x

9    938 (9th Cir. 2011). And as the Court noted above, the Homeowners have not demonstrated any

10   actual damages from the minimal delay in Security National issuing a declination letter. As it

11   stands it appears there are no damages that Security National would be liable for. This claim

12   seems part and parcel of Security National's first claim. If there is no coverage, no duty to

13   defend and no duty to indemnify, then there is no duty to pay damages related to a judgment

14   against the insured. However, the Court notes that this issue was not well briefed, if at all, by the

15   parties. Security National discusses damages as it applies to the Homeowner's bad faith

16   arguments but not with regards to how it may be liable as a result of the default judgment. And

17   the Court cannot say with absolute certainty that there are no damages because the Homeowner's

18   CPA claim did not get dismissed. Because this issue was not briefed with specificity, the Court

19   cannot grant summary judgment on it. The Court therefore DENIES Security National's Motion

20   as to this claim.

21   **C.      Homeowners' Motion for Summary Judgment**

22   The Homeowners moved for summary judgment on:

23   1. Whether Security National breached its duty to defend LND in bad faith?

24

1   2. Whether the Security National denial letter admits it breached its duty to
    defend LND?
2   3. Whether AmTrust was a Security Nationals agent?
    4. Whether Security National's statutory, common law, and judicial duties of
3   good faith to LND delegable [sic]?
    5. Whether the Court should exclude any reservation of rights that may exist
4   from AmTrust?
    6. Whether Security National is estopped from asserting its exclusion, and the
5   Judgment against LND is the presumed damage [sic] in this matter?
    7. Whether the Security National [sic] breach [sic] its duty to investigate in bad
6   faith?

7   (Def. Mot. at 8-9.)

8        Though most of these issues have been dealt with already in the Order, the Court will

9   address certain issues to clarify its position.

10       First, whether Security National's denial or declination letter admits it breached its duty.

11  This argument is premised off the Homeowners' claim that Security National relied on facts

12  outside the eight corners of the underlying complaint and the policies to deny coverage. It

13  highlights certain words and facts that were not in the underlying complaint in support of this

14  argument. (Def. Mot. at 12.) This argument is unpersuasive. The highlighted "facts," which are

15  mostly one or two words that refer to dates, were not the facts that Security National relied on in

16  determining that coverage did not apply. And Security National admits that it references various

17  aspects of its investigation in its letter, but points out that these were not the facts that it relied on

18  in making its determination. (Pl. Response at 2.) The Court finds this argument meritless.

19       Second, whether AmTrust is an agent of Security National is not in dispute. (Pl.

20  Response at 3.) And it is not in dispute the Security National's duties of good faith to LND were

21  non-delegable. (Id.) These are also issues that are more in line with motions in limine than issues

22  appropriate for summary judgment as these are not claims that require judgment as a matter of

23  law.

24

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 20

1   Finally, whether the Court should exclude a reservation of rights letter is not at issue.

2   Security National claims that no reservation of rights letter was issued. (Pl. Response at 2.) The

3   Homeowners' beliefs otherwise appear to stem from Security National's declination letter which

4   states Security National's "investigation of this matter is conducted under a full reservation of

5   rights." (Id.) The Homeowners then argue that Security National did not identify the letter or

6   produce it through discovery and now asks the Court to exclude any reservation of rights letter

7   that Security National may produce during trial. Again, this is not an issue for summary

8   judgment. The Homeowner's counsel should have made discovery motions or at the very least

9   participated in discovery before making this argument. And the argument also appears to have no

10   basis in fact.

11   For these reasons, the Court DENIES the Homeowner's Motion to Summary Judgment in

12   its entirety.

13                            **CONCLUSION**

14   The Court finds that no coverage under Security National's policies existed for LND for

15   the underlying claims against it and that Security National did not breach its duty to defend. The

16   Court GRANTS summary judgment for Security National as to Count I of its Amended

17   Complaint. The Court further finds that the Homeowners' Breach of Contract, Failure to Act in

18   Good Faith, Bad Faith and Estoppel & Waiver claims fail and GRANTS Security National's

19   Motion as to these counter-claims. But the Court finds that because the Homeowners CPA claim

20   was not briefed by either party nor Count III, the Court cannot grant summary judgment on these

21   issues. The Court DENIES Security National's Motion as to these claims. The Court DENIES

22   the Homeowners' Motion in its entirety.

23   //

24

The clerk is ordered to provide copies of this order to all counsel.

Dated March 1, 2023.

Marsha J. Pechman
United States Senior District Judge